IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| vs. § | Criminal Action No.: 3:24-474-MGL-1 |
| § | |
| MALIK JAHLIL BELL, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO HOLD DEFENDANT IN BREACH OF PLEA AGREEMENT**

### I.  INTRODUCTION

Pending before the Court is the government's motion to hold Defendant Malik Jahlil Bell (Bell) in breach of his plea agreement. Having carefully considered the motion, the response, the oral arguments, the record, and the applicable law, it is the judgment of the Court the government's motion will be granted.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Bell on numerous counts, the majority of which relate to bank fraud and money laundering. After failing to appear for his arraignment, Bell self-surrendered to authorities on July 3, 2024. On July 31, 2024, he was released on an unsecured bond. As is relevant here, his bond conditions included GPS monitoring and a prohibition on the use of Automatic Teller Machines (ATMs).

On August 27, 2024, Bell pled guilty, pursuant to a written plea agreement, to conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8).  In pertinent part, the plea agreement states,

> The Defendant understands that the obligations of the Government within the Plea Agreement are expressly contingent upon the Defendant's abiding by federal and state laws and complying with any bond executed in this case.  In the event that the Defendant fails to comply with any of the provisions of this Agreement, either express or implied, the Government will have the right, at its sole election, to void all of its obligations under this Agreement . . . .
>
> . . . .
>
> The Defendant agrees to voluntarily surrender to, and not to contest the forfeiture by, the United States of America of any and all assets and property, or portions thereof, owned or purchased by the Defendant which are subject to forfeiture pursuant to any provision of law and which are in the possession or control of the Defendant or Defendant's nominees.

Amended Plea Agreement ¶¶ 4–5.

On August 30, 2024, Bell posted a photograph on his Facebook account showing the back of four driver's licenses from various states with the captions "Get at me" and "Scannable license available $250 w/ hologram[.]"  At least one of the licenses purported to be a REAL ID.

On September 2 and 22, 2024, Bell posted two music videos on his YouTube account. During the videos, Bell displayed his court-ordered ankle monitor, two designer watches, copious stacks of cash, two Cuban-link necklaces, a diamond medallion containing what appeared to be a character facing an ATM (the custom medallion), and a diamond medallion containing what appeared to be a bank overlaid with the words "SWIPERZ ONLY" (the Swiperz Only medallion). The government thereafter sent Bell a letter demanding he forfeit two designer watches, two

Cuban-link necklaces, the custom medallion, the Swiperz Only medallion, and cash in an unknown quantity.

On September 30, 2024, the Magistrate Judge determined Bell violated the conditions of his bond by making the August 30 Facebook post. The Magistrate Judge thus modified Bell's conditions to restrict him to home detention and prohibit him from posting on social media.

On October 1, 2024, Bell forfeited two designer watches, two Cuban-link necklaces, and a Swiperz Only medallion to the government. Bell failed to surrender either the cash or the custom medallion. Further, the Swiperz Only medallion Bell forfeited appeared to belong to one of his codefendants.

On October 17, 2024, the Court granted Bell permission to attend his grandmother's funeral in Orangeburg, South Carolina. The United States Probation Office (USPO) advised Bell he had permission only to attend the funeral and cautioned him not to deviate to any other destination. Nonetheless, according to GPS monitoring, Bell visited 8810 Farrow Road in Columbia, South Carolina, for approximately eight minutes on his way home.

### III.   STANDARD OF REVIEW

Plea agreements "rest on contractual principles, and each party should receive the benefit of its bargain." *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). The government may be released of its duty to conform to the terms of a plea agreement where the defendant materially breaches the agreement. *See United States v. West*, 2 F.3d 66, 69–70 (4th Cir. 1993) (explaining a material breach "relieves the government of its obligation to conform to the agreement's terms even when [the] defendant has relied to his substantial detriment by, for example, entering his guilty plea, subjecting himself to conviction, and beginning service of the

sentence"). "Central to determination of the materiality of a breach is the extent to which the injured party will be deprived of the benefit which [it] reasonably expected." *United States v. Scruggs*, 356 F.3d 539, 543 (4th Cir. 2004) (internal quotation marks omitted).

### IV.    DISCUSSION AND ANALYSIS

The government first argues Bell materially breached his plea agreement by posting on Facebook an offer to sell scannable licenses in violation of state and federal law.

Under South Carolina law, it is generally "unlawful for any person to . . . offer to sell . . . any identification card or document purporting to contain the age or date of birth of the person in whose name it was issued . . . ." S.C. Code Ann. § 16-13-450(1). "The term 'offer to sell' includes every inducement, solicitation, attempt, printed or media advertisement to encourage a person to purchase an identification card." *Id.* § 16-13-450(3).

Similarly, under federal law, it is unlawful for any person to "knowingly transfer a . . . false identification document knowing that such document was stolen or produced without lawful authority." 18 U.S.C. § 1028(a)(2). "Any person who attempts . . . to commit [this] offense . . . shall be subject to the same penalties as those prescribed for the offense[.]" *Id.* § 1028(f),

As an initial matter, Bell claims the Facebook post was made by an unnamed friend whom Bell authorized to maintain his social media presence while he was in custody. The Court finds this argument unconvincing, as the post was made nearly one month after Bell was released.

Further, Bell asserts the government failed to "claim that the purported licenses were confirmed to have been actual licenses, were confirmed to have contained the age or date of birth of any individual, or were actually sold." Bell's Response 1–2. As the government explained,

4

however, at least one of the licenses purports to be REAL ID, which must contain the age and date of birth of the person in whose name it was issued. Government's Motion at 6–7; 49 U.S.C. § 30301 note. This constitutes sufficient evidence upon which the Court concludes Bell both offered to sell an identification card purporting to contain the age or date of birth of the person in whose name it was issued, in violation of S.C. Code Ann. § 16-13-450, and attempted to transfer a false identification document, in violation of 18 U.S.C. § 1028(a)(2) and (f).

Therefore, the Court finds Bell failed to "abide by federal and state laws" and, in doing so, materially breached his plea agreement. Amended Plea Agreement ¶ 4.

The government next argues Bell materially breached his plea agreement by deviating to 8810 Farrow Road on the way home from his grandmother's funeral.

Neither party disputes Bell stopped at 8810 Farrow Road for approximately eight minutes. The parties do, however, dispute what Bell did during the stop. The government claims Bell used a Bank of America ATM in violation of his bond conditions. Bell, on the other hand, insists he purchased a sandwich at Subway, which is adjacent to, and roughly fifty feet from, a Bank of America ATM.

Ultimately, the purpose of the stop is irrelevant. Bell was instructed by the USPO not to deviate to any other destination. In doing so, Bell clearly violated the terms of his bond conditions and thus materially breached his plea agreement. *See, e.g.*, *United States v. King*, 592 Fed. App'x 161, 163 (4th Cir. 2014) (explaining that, where a plea agreement requires the defendant to abide by certain conditions of release pending sentencing, his failure to abide by those conditions constitutes a material breach of the agreement); *United States v. Gross*, 199 Fed. App'x 219, 237 (4th Cir. 2006) (same).

5

Finally, the government argues Bell materially breached his plea agreement by failing to surrender forfeitable property.

Regarding the custom medallion, Bell insists his ex-girlfriend discarded it while driving down the interstate. As the government emphasizes, however, Bell has neglected to provide any information that would assist the government in verifying the veracity of his claims. Indeed, due to the apparent importance of the custom medallion as reflected through Bell's social media, the Court finds his story lacking in credibility.

Next, as to the cash, Bell asserts the cash seen in his YouTube videos was "compiled by the dozens of participants in the videos to give the appearance of affluence for purposes of the shoot." Bell's Response at 6. He further claims the stacks of cash shown in his videos were "constructed with primarily one-dollar bills, with twenty-dollar bills visible at the ends to give the appearance of greater value." Government's Motion at 12. Again, the Court is unconvinced.

As the government explains, in one of the videos, Bell throws a stack of cash onto the floor, and "[t]he stack . . . scatters clearly showing [it] was comprised of $20 bills." *Id.* Bell claims this video was recorded in early June 2024. But, during a call from jail on July 20, 2024, Bell mentioned he had between $15,000 and $20,000 set aside to hire an attorney and intimated the funds were illegally obtained. These facts, in combination, indicate Bell had within his possession or control a large sum of cash forfeitable under his plea agreement, and his failure to surrender that cash constitutes a material breach of the agreement.

## V.     CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of the Court the government's motion to hold Bell in breach of his plea agreement, ECF No. 207, is **GRANTED**.

**IT IS SO ORDERED.**

Signed this 4th day of December 2024, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
